| | | |
|---|---|---|
| **JEFFREY C. BEARCE,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 1:13-cv-01-JDL** |
| | ) | |
| **CITY OF WATERVILLE,** | ) | |
| | ) | |
| **Defendant** | ) | |

### RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT

In this action alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, the Rehabilitation Act, 29 U.S.C. § 794, and the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4572, brought by a former sergeant of the Waterville Police Department, the defendant city moves for summary judgment on all claims set out in the complaint. I recommend that the court grant the motion.

## I.  Legal Standard

### A.  Federal Rule of Civil Applicable Procedure 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material

if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## B. Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id.* The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with

an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## II. Factual Background

The following material facts are undisputed and properly supported in the parties' respective statements of material facts submitted in accordance with Local Rule 56.

The plaintiff was employed by the Waterville Police Department beginning on March 15, 1988. Plaintiff's Statement of Additional Material Facts ("Plaintiff's SMF") included in Plaintiff Jeffrey C. Bearce's Opposing Statement of Material Facts ("Plaintiff's Responsive SMF") (ECF No. 23),

beginning at 9, ¶ 56; Defendant's Reply to Plaintiff's Statement of Additional Material Facts ("Defendant's Responsive SMF") (ECF No. 25) ¶ 56. During his employment the plaintiff rose to the rank of sergeant. *Id.* ¶ 57. The position of sergeant is subordinate only to the chief and deputy chief of the Waterville Police Department. *Id.* ¶ 58. At all relevant times, Joseph Massey was the chief of the Waterville Police Department and, in that position, exercised supervisory authority over the plaintiff. Defendant's Statement of Material Facts in Support of Motion for Summary Judgment ("Defendant's SMF") (ECF No. 21) ¶ 44; Plaintiff's Responsive SMF ¶ 44.

On December 5, 2009, the plaintiff began a medical leave of absence from his job after being diagnosed with leukemia. *Id.* ¶ 1. At the urging of his treating oncologist, Dr. Hertler, the plaintiff applied for disability benefits from the Maine Public Employees Retirement System, and was awarded disability benefits in March 2010. *Id.* ¶ 4. He did not collect any benefits until March 2011. Plaintiff's SMF ¶ 61; Defendant's Responsive SMF ¶ 61.

By August 2010, the plaintiff had run out of sick time and vacation time of his own, and the defendant agreed to allow other city employees to donate their own vacation time to the plaintiff so that he could remain on the city's payroll and receive full pay and benefits. Defendant's SMF ¶ 5; Plaintiff's Responsive SMF ¶ 5. In December 2010, the plaintiff advised Chief Massey that he had been granted the right to retire on a disability pension from the Maine Public Employees Retirement System. *Id.* ¶ 6. At the same time, he expressed concern about air quality issues at the police station. *Id.*[1] The plaintiff discussed with Chief Massey the option of retiring and inquired whether the defendant would pay his individual health care insurance premium for a period of either 12 or 18 months so that he would not face a gap in coverage if he retired. *Id.* ¶¶ 7-8.[2]

---

[1] The plaintiff's qualification of this paragraph of the defendant's statement of material facts does not affect the portion of that paragraph providing the basis for this and the previous sentence of the text. Plaintiff's Responsive SMF ¶ 6.

[2] The plaintiff's qualification of paragraph 7 of the defendant's statement of material facts does not affect the portion of that paragraph providing the basis for this sentence of the text. Plaintiff's Responsive SMF ¶ 7.

After consulting with the city's attorney, the city manager determined that the city could not pay employee health insurance benefits to the plaintiff if he were no longer a city employee. *Id.* ¶ 8. The city manager was also the city's personnel director, with ultimate decision-making authority with regard to personnel matters. *Id.* ¶ 48. After being advised of this, the plaintiff advised Chief Massey that he was returning to work, presenting a note from his oncologist dated December 29, 2010, that cleared him to work without any restrictions. *Id.* ¶ 9. The chief was surprised to have the plaintiff tell him that he was returning to work without any restrictions. *Id.* ¶ 10.[3]

The plaintiff never asked the defendant for any kind of light duty assignment and never indicated that he needed any kind of workplace accommodation whatsoever, but simply indicated that he was capable of returning to his former position as sergeant without any restrictions. *Id.* ¶ 11. Dr. Hertler testified that, as an oncologist, clearing the plaintiff to return to work is very different from the analysis that would be used by an occupational therapist, and in the plaintiff's case was mainly based on this view that the plaintiff looked about the same in December 2010 as he did when he began treatment with Dr. Hertler a year earlier. *Id.* ¶ 13. At the time he presented the December 29, 2010, note from his oncologist, the plaintiff's position was that he could perform his job as sergeant without restriction or accommodations. *Id.* 14.

Because the plaintiff had been out of work for a year fighting a life-threatening illness and had advised the defendant that he had been deemed disabled upon his application to the Maine Public Employees Retirement System, the defendant decided that it needed to ascertain whether

---

[3] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, but provides no citation to the record in support of the denial, as required by Local Rule 56(c), stating only that he "is without sufficient knowledge or information to admit or deny this statement and therefore denies same." Plaintiff's Responsive SMF ¶ 10. The paragraph is supported by the record citation given and, therefore, is deemed admitted. *McBee v. Delica Co.,* No. 02-198-P-C, 2003 WL 22586387, at *2 n.1 (D. Me. Nov. 10, 2003). The same standard will apply to the six other paragraphs of the defendant's statement of material facts to which the plaintiff makes the same response.

the plaintiff could physically perform the essential functions of the sergeant's position.  *Id.* ¶ 15.[4] The plaintiff's employment with the Waterville Police Department was governed by the terms of a collective bargaining agreement between the plaintiff's union and the city, which included the rights of the plaintiff and the city with regard to the return to work of a city employee following an absence due to a major illness.  *Id.* ¶ 16.

The collective bargaining agreement provides that the city has the right to require an employee to undergo a physical examination by a physician designated by the city, if the employee has missed three consecutive days due to illness, and is not required to accept a statement from the employee's own physician regarding the specific nature and projected duration of the illness.  *Id.* ¶ 17.[5]  The collective bargaining agreement also provides that, if there is a dispute between the physician designated by the city and the employee's own physician about the employee's fitness to return to work, the question will be submitted to a third physician, mutually agreeable to the parties, whose decision will resolve the dispute.  *Id.* ¶ 18.

The city manager decided to have the plaintiff submit to an evaluation by Dr. John Bielecki, a board-certified occupational health specialist, to determine the plaintiff's fitness to return to work without restrictions.  *Id.* ¶ 19.   The city manager provided Dr. Bielecki with basic information about the plaintiff's history with the city and the reason for the requested evaluation, while Chief Massey provided job descriptions for the positions of sergeant and patrol officer.  *Id.* ¶ 20.  As part of his evaluation, Dr. Bielecki interviewed the plaintiff and confirmed the accuracy of the information he had been given by the city manager.  *Id.* ¶ 21.

---

[4] The plaintiff's qualification of this paragraph of the defendant's statement of material facts is limited to facts that are not included in the text.  Plaintiff's Responsive SMF ¶ 15.

[5] The plaintiff's qualification of this paragraph and paragraph 18 of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶¶ 17, 18, does not qualify or controvert any of the factual statements in the paragraphs, which are therefore deemed admitted.

Dr. Bielecki reviewed the plaintiff's treatment records documenting the plaintiff's cancer treatment, as well as taking a medical history from the plaintiff. *Id.* ¶ 22. The plaintiff advised Dr. Bielecki that his chemotherapy regimen left him fatigued and generally run down, and that he had suffered at least a couple of serious infections as a result of the adverse effect of the chemotherapy on the plaintiff's immune system. *Id.* ¶ 23. The plaintiff reported being out of bed for 12.5 hours each day, which was significant to Dr. Bielecki. *Id.* ¶ 25.[6] In the initial evaluation by Dr. Bielecki, the plaintiff was unable to do even one sit-up, even though the physical fitness requirements of the sergeant's position required that he do 24 sit-ups in one minute. *Id.* ¶ 26.[7]

On January 7, 2011, after his initial evaluation of the plaintiff, Dr. Bielecki provided the city a one-page document captioned "Fitness for Duty Evaluation" indicating that the plaintiff needed further evaluation prior to clearance to return to work and that this would be discussed with the plaintiff. *Id.* ¶ 27. In considering that the plaintiff was being evaluated for a possible return to work after a year's absence from a job that was very physically demanding and involved not only his safety but also the safety of others, Dr. Bielecki identified several significant issues, including the facts that the plaintiff had leukemia that had been treated with chemical agents that had the potential to cause heart damage, that he was deconditioned and easily fatigued, and that he was obese and had been diagnosed with diabetes, another cardiac risk factor. *Id.* ¶ 28.

After reviewing the plaintiff's medical records, taking a history from him, and conducting his own physical examination on January 6, 2011, Dr. Bielecki disagreed with the opinion of the plaintiff's oncologist that he could return to work as a sergeant without any restrictions. *Id.* ¶ 29. Although Dr. Bielecki had formed some preliminary opinions based on the history that the plaintiff

---

[6] The plaintiff's qualification of this paragraph of the defendant's statement of material facts does not affect that portion of the paragraph that forms the basis of this sentence in the text. Plaintiff's Responsive SMF ¶ 25.
[7] The plaintiff's qualification of this paragraph of the defendant's statement of material facts does not affect that portion of the paragraph that forms the basis of this sentence in the text. Plaintiff's Responsive SMF ¶ 26.

had provided and the physical assessment he performed on January 6, 2011, Dr. Bielecki determined that he needed to perform both cardiac and strength testing of the plaintiff to obtain information necessary for him to decide whether the plaintiff could return to work without restrictions, as his oncologist had cleared him to do. *Id*. ¶ 30.

Given the facts that the plaintiff had undergone chemotherapy with drugs known to cause heart damage, his age of 50 years, his diabetes, his obesity, his deconditioning, and the strenuous nature of a job as a police officer, Dr. Bielecki concluded that cardiac testing should be performed before any strength or police fitness testing could be done. *Id*. ¶ 31. Before any testing was done, Dr. Bielecki conferred with the plaintiff's oncologist, Dr. Hertler, who agreed that it would be prudent to perform cardiac testing. *Id.* ¶ 32.[8] Dr. Hertler agreed with Dr. Bielecki's plan to submit the plaintiff to cardiac stress testing and a further strength/carry test of some type. *Id*. ¶ 33.

Dr. Bielecki arranged with the plaintiff to conduct cardiac stress testing, which was performed on January 25, 2011. *Id*. ¶ 34. Although the plaintiff performed satisfactorily in the cardiac stress testing, Dr. Bielecki was still concerned about the plaintiff's deconditioning, obesity, and other issues and decided additional testing was necessary, including an assessment of lifting and carrying, and basic strength and coordination, before he could form an opinion about the plaintiff's fitness to return to work. *Id.* ¶ 35.

Dr. Bielecki's office scheduled the second part of testing, the lift and carry test, to take place on February 9, 2011, but on the day before that date, the plaintiff advised the city that he could not complete Dr. Bielecki's evaluation because he had suffered a relapse of his leukemia and had to return to the hospital immediately for a one month in-patient stay and a bone marrow

---

[8] The plaintiff's qualification of this paragraph and paragraph 33 of the defendant's statement of material facts does not affect those portions of the paragraphs that provide the bases for these statements in the text. Plaintiff's Responsive SMF ¶¶ 32, 33.

transplant. *Id.* ¶ 36. At this point, the plaintiff had not worked for approximately 14 months, and the city had been forced to fill his position either by paying overtime to the other two sergeants or by appointing a temporary sergeant to fill the plaintiff's position. *Id.* ¶ 37.

Following the plaintiff's relapse, Dr. Hertler's office informed the city that it was very difficult to predict his return to work because the plaintiff needed a bone marrow transplant and very aggressive chemotherapy; the doctor could only estimate that the plaintiff might be able to return to work in approximately one year. *Id.* ¶ 38. After hearing this, the city manager believed that it was necessary for the city either to obtain a voluntary resignation from the plaintiff or to terminate his position in order to achieve stable staffing within the police department. *Id.* ¶ 39.[9]

The city manager issued a letter of termination dated February 23, 2011, to the plaintiff, effective on February 18, 2011. *Id.* ¶ 41. The city manager believed it was not possible to allow the plaintiff to return to work in any capacity until the additional testing was completed. *Id.* ¶ 43.[10] The plaintiff concedes that, had he been allowed to return to his position as sergeant at any time between December 29, 2010, and February 18, 2011, some of the physical requirements of his position would necessarily have been transferred to other police officers. *Id.* ¶ 42.

The Waterville Police Department had never had a prior case of an employee returning to work after more than a year's absence while fighting a life-threatening illness, and the city relied on Dr. Bielecki to ascertain whether the plaintiff could actually return to work without restrictions, despite being deemed disabled by the Maine Public Employees Retirement System. *Id.* ¶ 46.[11] In assessing all of the information needed to form an opinion as to whether the plaintiff could be

---

[9] The plaintiff denies this paragraph, but provides no citation to the record. *See* fn.3, *supra*.

[10] The plaintiff denies this paragraph, but provides no citation to the record. *See* fn. 3, *supra*.

[11] The plaintiff admits only that the Waterville Police Department had not had a case of an employee returning to work after more than a year's absence while fighting a life-threatening illness during the term of the plaintiff's employment, but asserts that he is otherwise "without sufficient knowledge or information to admit or deny the remainder of this statement and therefore denies same." Plaintiff's Responsive SMF ¶ 46. This "denial" is not an acceptable response under Local Rule 56, and the entire paragraph is accordingly deemed admitted.

cleared to return to work without restrictions, Dr. Bielecki considered a determination by the Maine Public Employees Retirement System that the plaintiff was disabled to be significant because that determination was made by doctors who had already evaluated an application for disability benefits. *Id.* ¶ 47.

The city solicitor never discussed any possible light duty assignment for the plaintiff with the city manager or Chief Massey, because they needed to allow Dr. Bielecki's evaluation to conclude so that he could advise the city about what the plaintiff would be physically capable of doing upon a return to work. *Id.* ¶ 53. Waterville Police Department sergeants on unrestricted status must be capable of performing all the physical tasks of a police officer on the street, as they are frequently called upon to do. *Id.* ¶ 54.[12] The city manager did not believe that a sergeant's position could be filled by anyone as a light duty assignment even if the plaintiff had requested light duty. *Id.* ¶ 55.[13]

Dr. Hertler testified that he was not sure whether the plaintiff could have satisfied all of the physical fitness requirements in the plaintiff's job description in December 2010. Plaintiff's SMF ¶ 73; Defendant's Responsive SMF ¶ 73.

The plaintiff was the only employee of the Waterville Police Department who was required to undergo an evaluation by a physician chosen by the city in order to return to work during the tenure of Chief Massey and the city manager. *Id.* ¶ 79. Chief Massey did not ask Dr. Bielecki to evaluate the plaintiff's immune system. *Id.* ¶ 80.[14] Dr. Bielecki did not recommend or perform any testing of the extent to which the plaintiff's immune system might be affected by contact with

---

[12] The plaintiff's qualification of this paragraph of the defendant's statement of material facts does not affect the portion of that paragraph that provides the basis of the sentence in the text. Plaintiff's Responsive SMF ¶ 54.

[13] The plaintiff denies this paragraph, but provides no citation to the record. *See* fn.3, *supra*.

[14] The defendant's qualification of this paragraph of the plaintiff's statement of material facts does not require any change in the language in this sentence of the text. Defendant's Responsive SMF ¶ 80.

the public.  *Id.* ¶ 81.  After his initial evaluation, Dr. Bielecki thought that the plaintiff was capable

of only desk duties.  *Id.* 82.[15]  In an email to the city solicitor dated January 11, 2011, Dr. Bielecki

was optimistic about the plaintiff's return to work.  *Id.* ¶ 84.

The city manager stated in a January 11 email to the city solicitor that a light duty

assignment for the plaintiff "could be problematic for us."  *Id.* ¶ 85.  The city had provided light

duty assignments to other employees of the Waterville Police Department, including patrol officers

and sergeants, who returned to work following an injury or illness.  *Id.* ¶ 88.  Such light duty

assignments were usually within the Department, but were occasionally outside the Department.

*Id.* ¶ 89.

After the plaintiff submitted his return-to-work note to the city on December 29, 2010,

neither Chief Massey nor the city manager discussed with the plaintiff the potential for workplace

accommodations.  *Id.* ¶¶ 91-94.  The city manager prepared a resignation letter for the plaintiff

because he felt that it was the best way to accomplish the termination of the plaintiff's employment

with the city.  *Id.* ¶ 101.

### III.  Discussion

Much of the defendant's motion is devoted to a defense of the city's demand that the

plaintiff be evaluated by Dr. Bielecki.  Defendant City of Waterville's Motion for Summary

Judgment ("Motion") (ECF No. 20) at 8-14.  In response, the plaintiff disavows any challenge to

that decision.  Plaintiff's Opposition to Defendant's Motion for Summary Judgment

("Opposition") (ECF No. 22) at 9.  Rather, the plaintiff contends, the defendant violated both the

federal and the state statutes at issue by causing a "long and unnecessary delay in conducting" the

---

[15] The defendant's denial of this paragraph of the plaintiff's statement of material facts is consistent with the modified
language used in this sentence of the text.  Defendant's Responsive SMF ¶ 82.

evaluation by Dr. Bielecki and "fail[ing] to act on Dr. Bielecki's determination that he could return to light duty." *Id*. at 9-13. He characterizes this as "a failure-to-accommodate claim." *Id*. at 9.

A plaintiff who alleges disability discrimination under a theory of disparate treatment or failure to accommodate, as does the plaintiff here, must establish under both the ADA and the MHRA (1) that he suffers from a disability, (2) that he is nevertheless able to perform the essential functions of the job at issue, either with or without reasonable accommodation, and (3) that the defendant took an adverse employment action against him because of his protected disability. *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 104 (1st Cir. 2005); *Doyle v. Department of Human Servs.*, 2003 ME 61, ¶ 14, 824 A.2d 48, 54. Because the Maine Law Court has said that it is appropriate to look to federal precedent interpreting the ADA for guidance in interpreting the MHRA, *Doyle*, 2003 ME 61, ¶ 14 n.6, 824 A.2d at 54 n.6, my discussion will apply equally to both claims, *see Kvorjak v. Maine*, 259 F.3d 48, 50 n.1 (1st Cir. 2001).[16]

The plaintiff in this case prefers, Opposition at 9, the four-part permutation of this standard set out by Magistrate Judge Kravchuk in *McLean v. Delhaize America*, No. 1:12-cv-00381-GZS, 2013 WL 1632646, at *3 (D. Me. Mar. 27, 2013):

> Four elements govern the analysis of a failure-to-accommodate claim: (1) whether the plaintiff is a qualified individual with a disability under the applicable statute; (2) whether the employer is subject to the statute; (3) whether the employer, despite knowing of the employee's physical or mental limitations, did not reasonably accommodate those limitations; and (4) whether the employer's failure to do so affected the terms, conditions, or privileges of the plaintiff's employment.

Here, the plaintiff's failure-to-accommodate claim appears to address the second and third elements of the *Tobin* test and the third and fourth elements of the *McLean* test. The plaintiff's contention, that the time elapsed between his presentation of the letter from Dr. Hertler asserting

---

[16] The parties agree that the same analysis also applies to the plaintiff's claims under the Rehabilitation Act. Motion at 17; Opposition at 17.

that he could return to work without restrictions, which could have been no earlier than December 29, 2010, the date of the letter, and the "conducting" of Dr. Bielecki's evaluation constitutes a failure to accommodate, founders on the lack of evidence that the defendant caused any delay in Dr. Bielecki's complete evaluation, whatever the date of the "conducting" is alleged to have been, as well as the short period of time actually elapsed.

Dr. Bielecki's evaluation began on January 6, 2011, and included interviewing and examining the plaintiff and reviewing his medical records, about which he reported to the defendant by letter dated January 7, 2011. Defendant's SMF ¶¶ 9, 21-23, 27, 29; Plaintiff's Responsive SMF ¶¶ 9, 21-23, 27, 29. A total of nine days between the two events, two of which were weekend days and another of which was a national holiday, cannot by any reasonable standard be deemed a delay sufficient to constitute a failure to accommodate as a matter of law. Nothing in the case law cited by the plaintiff suggests otherwise.

Thus, in *Kennedy v. St. Francis Hosp.*, 225 F.Supp.2d 128 (D. Conn. 2002), the "significant delay in returning [the plaintiff] to work" was five weeks, and the court concluded that the employer had failed to engage in the interactive process with the employee "contemplated by the ADA in which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Id*. at 138 (citation and internal quotation marks omitted). In *O'Dell v. Department of Pub. Welfare*, Civil Action No. 3:02-130J, 2004 U.S.Dist.LEXIS 23585 (W.D. Pa. Nov. 10, 2004), "certain forms were passed between the parties and various discussions were held between the parties" over a period of 16 months after the employee alleged that he had "provided the necessary paperwork to return to work." *Id*. at *25. The court also found that the employer had acted in bad faith in the interactive process required by the ADA. *Id*. at *27. Here, there is no allegation of bad faith, and, even counting the time elapsed between the January 6,

2011, examination and the February 9, 2011, date on which Dr. Bielecki's office had scheduled the remaining testing that he wished to do, the elapsed time was about four weeks.[17]

Even if this elapsed time were sufficient to come within the ambit of the *Kennedy* opinion, the plaintiff has not identified any evidence that would allow a reasonable factfinder to conclude that the defendant caused the delay in scheduling the remainder of the testing that Dr. Bielecki desired. Indeed, he admits that Dr. Bielecki "arranged with Plaintiff to conduct cardiac stress testing, which was performed on January 25, 2011[,]" Defendant's SMF ¶ 34, Defendant's Responsive SMF ¶ 34, and that "Dr. Bielecki's office scheduled the second part of Plaintiff's testing, the lift and carry test, to take place on February 9, 2011[.]" *Id.* ¶ 36. From all that appears, the defendant had nothing to do with the scheduling of the additional tests sought by Dr. Bielecki.[18]

The plaintiff's proffered facts that "the cardiac stress test and lift and carry test, to the extent they were required, could have been administered in a far shorter time," and that he only learned that he would have to undergo the lift and carry test after he had "passed" the cardiac stress test, Plaintiff's SMF ¶¶ 97-98, are denied by the defendant, Defendant's Responsive SMF ¶¶ 97-98, and do not support the conclusion that "the tests were being administered in a manner designed to frustrate his return to work," contrary to the plaintiff's assertion. Plaintiff's SMF ¶ 99.[19] The plaintiff's assertion that the tests "could have been administered in a far shorter time," Plaintiff's SMF 98, is based solely upon his own testimony at deposition that "that test can be scheduled in a

---

[17] Since the plaintiff advised the city on February 8, 2011, that he had suffered a relapse and had to return immediately to the hospital for a one month stay and a bone marrow transplant, Defendant's SMF ¶ 36, Plaintiff's Responsive SMF ¶ 36, he cannot claim to have been able to perform the essential activities of any job with the defendant after that date. At that time, Dr. Hertler informed the defendant that the plaintiff might be able to return to work "in approximately one year." *Id.* ¶ 38.

[18] In this regard, see the plaintiff's deposition testimony: "I had no idea what the city was telling Bielecki." Deposition of Jeffrey Bearce (ECF No. 19-10) at 92.

[19] The defendant has moved to strike this paragraph of the plaintiff's statement of material facts as "not a statement of fact, but an unsupported opinion." Defendant's Responsive SMF ¶ 99. That objection is well taken, and I address the assertion here as an argument rather than a fact.

14

day, the heart test or the treadmill. They could have it scheduled in the next day. The lifting test they could have done in the office." Deposition of Jeffrey Bearce ("Plaintiff's Depo.") (ECF No. 19-10) at 98-99. The plaintiff does not say that he asked that the tests be scheduled sooner, that it was the usual practice of Dr. Bielecki's office to schedule such tests for the day after an examination, that he has the necessary expertise to determine the appropriate intervals between the two tests, that he was available to take the tests on any date sooner than the dates for which they were scheduled, or that Dr. Bielecki did not already have such tests scheduled for other patients on the dates and at the times when the plaintiff would have been available. Without such additional information, the plaintiff's unsupported opinion cannot create an issue of fact.

The plaintiff's alternate argument is that the defendant was required to offer him light duty work immediately upon receiving "Dr. Bielecki's determination that he could return to light duty." Opposition at 9. He provides no citation to the record evidence of this determination; presumably, he relies on paragraphs 82 and 84 of his statement of material facts. The plaintiff's presentation of this issue is sketchy, but a reasonable jury could find that Dr. Bielecki found that the plaintiff could return to a desk job but nothing more strenuous until Dr. Bielecki completed the testing he wished to pursue. The parties interpret Dr. Bielecki's initial report differently, but neither is necessarily correct as a matter of law. The report says, in relevant part:

> I do not feel comfortable having Mr. Bearce return to full activity without further evaluation. I think that this should include, at a minimum, a repeat RVG or echocardiogram in order to assess ejection fraction and overall cardiac function. In addition, due to the history of hypertension, diabetes, and age, coupled with treatment with potentially cardiotoxic drugs, an exercise stress test is quite reasonable. I would suggest these prior to allowing him to actually perform his police fitness testing.
>
> My suggestion is that he be allowed to return to work at his desk activities. I believe that a safe guess in terms of lifting and carrying would be 25 to 35 pounds to start, gradually increasing as tolerated.

Fitness for Duty Evaluation (ECF No. 19-12) at 5.[20]

The question, thus, becomes whether the defendant's alleged failure to comply with Dr. Bielecki's recommendation constitutes a violation of the ADA or of the Maine Human Rights Act, and it is here that the plaintiff falters. He presented medical evidence to the defendant that he was able to return to his work as a sergeant without restrictions. Defendant's SMF ¶¶ 9, 11, 14; Plaintiff's Responsive SMF ¶¶ 9, 11, 14. He requested no accommodations. *Id.* ¶ 14. Thus, he cannot reasonably be deemed to have been "disabled" within the scope of the statutes he invokes at the relevant time.

"The obligation is on the employee to provide sufficient information to put the employer on notice of the need for accommodation." *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012).

> To survive a motion for summary judgment on a failure-to-accommodate claim, a plaintiff ordinarily must furnish significantly probative evidence that he is a qualified individual with a disability within the meaning of the applicable statute; that he works (or worked) for an employer whom the ADA covers; that the employer, despite knowing of the employee's physical or mental limitations, did not reasonably accommodate those limitations; and that the employer's failure to do so affected the terms, conditions, or privileges of the plaintiff's employment.

*Gómez-González v. Rural Opportunities, Inc.*, 626 F.3d 654, 664 (1st Cir. 2010) (quoting *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999)).

A case with facts that closely parallel those in this case is *Pamon v. Board of Trustees of Univ. of Illinois*, No. 09 C 5034, 2011 WL 3584334 (N.D. Ill. Aug. 8, 2011), and I find its reasoning persuasive. In that case, the plaintiff suffered a cerebral hemorrhage in 2001 and received disability benefits. *Id.* at *1. In 2005, he believed that he was able to return to duty as a

---

[20] The defendant states that the plaintiff was paid as if he were working in his sergeant's position "while Dr. Bielecki assessed Plaintiff's work capacity[,]" Reply at 4, so it appears that the plaintiff's demand for lost wages would not be applicable to this period.

police officer, and wrote a letter to that effect to the vice chancellor of administration of his employer, a university. *Id.* He sought medical clearance to return to work from his treating neurosurgeon, who wrote a letter recommending that he return to work. *Id.* at *2. When the employer's medical examiners required the plaintiff to undergo a functional capacity exam before authorizing his return to work, he refused, and, in 2006, filed a charge of discrimination. *Id.*

Rejecting the plaintiff's failure-to-accommodate ADA claim, the court expressed "serious doubts as to [the plaintiff's] ability to establish his 'disabled' status." *Id.* at *4. Assuming arguendo that the plaintiff was a qualified individual with a disability, the court held that "there is no suggestion whatsoever that [the plaintiff] requested reasonable accommodation or made the [university] aware that he desired any change to his duties." *Id.* at *5.

> As he admitted, at his December 23, 2005 appointment he told the doctors that he wanted to return to work as a police officer—not in some other capacity. And when he returned to Health Services in 2006, he tendered a March 2006 letter that, if anything, indicated he needed no accommodation; Dr. Bovis stated that [the plaintiff] had "shown complete healing" and that there was no longer any evidence of AVM [arteriovenous malformation]." . . . Thus, [the plaintiff's] failure to make his desire for accommodation known is one reason that his reasonable accommodation claim fails.

*Id.*

The same is true here. The plaintiff cannot take the position with his employer that he needs no accommodations due to a disability in order to return to work and then recover against that employer under the ADA, the Rehabilitation Act, or the Maine Human Rights Act for failing to accommodate the disavowed disability in returning him to work.

Perhaps anticipating this problem, the plaintiff agues in the alternative that the defendant was required to disregard his lack of a request for an accommodation and his oncologist's statement that he could return to work without restrictions because his "need for an

accommodation was obvious." Opposition at 13. None of the case law cited by the plaintiff in support of this argument involves a factual situation in which the employee and his treating physician have affirmatively told the employer that no accommodation is necessary.[21]

Indeed, in the one opinion cited in this regard by the plaintiff that is directly applicable in this district, the First Circuit observed that "[t]he ADA imposes liability on an employer for 'not making reasonable accommodations to the *known* physical or mental limitations' of an employee." *Reed* 244 F.3d at 260-61 (quoting 42 U.S.C. § 12112(b)(5)(A)). The emphasis is supplied by the court. In the case at hand, the defendant was not in a position to know that the plaintiff had a physical limitation that required accommodation when he had supplied medical evidence that he did not, several months after he had qualified for disability benefits based on his claim that he did. At the time when the plaintiff contends that the defendant should have returned him to work at a desk job, Dr. Bielecki had said only that he wanted more testing before concluding whether any accommodation actually was necessary.

Finally, the plaintiff argues, briefly, that the defendant discriminated against him "based on negative views of what it perceived to be his disability." Opposition at 16. This argument relies on the defendant's "concession" that it "believed by the end of 2010 that Plaintiff was disabled,[22] and the jury could conclude that it continued to hold that view notwithstanding Dr. Hertler's note." *Id*. The paragraph of the defendant's statement of material facts cited by the plaintiff in support of this "concession" was denied by the plaintiff. Plaintiff's SMF ¶ 45. While

---

[21] That case law is *Reed v. Lepage Bakeries, Inc.*, 244 F.3d 254 (1st Cir. 2001); *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127 (2d Cir. 2008), and *Norris v. Allied-Sysco Food Serv.*, 948 F.Supp. 1418 (N.D. Cal. 1996). Opposition at 14.

[22] The plaintiff's reference to this paragraph of the defendant's statement of material fact omits significant modifying language: "[T]he City believed by the end of 2010 that Plaintiff was disabled *and would not be returning to work*." Defendant's SMF ¶ 45 (emphasis added). Obviously, the city could not believe that the plaintiff would not be returning to work after he told the police chief, before Dr. Bielecki first saw the plaintiff on January 6, 2011, that he would in fact be doing so. *Id*. ¶¶ 9, 29.

that denial is unsupported by any citation to the record and the paragraph must accordingly be deemed admitted, Local Rule 56(f), it hardly seems fair that the plaintiff should benefit in this fashion from his own failure to comply with this court's local rule. In addition, "the end of 2010" preceded the plaintiff's request to return to his job as sergeant and his presentation of Dr. Hertler's December 29, 2010, note to the defendant, which occurred in early January 2011. Affidavit of Joseph Massey (ECF No. 19-1) ¶ 5. My recommendation, however, does not require resolution of this murky procedural tangle.

The standard applicable to this "regarded as" claim has been provided by the First Circuit, as follows:

> For purposes of the ADA, one is considered disabled if []he (a) has a physical or mental impairment that substantially limits one or more of [his] major life activities; (b) has a record of such an impairment; or (c) is regarded as having such an impairment. The regarded as prong of the ADA exists to cover those cases in which myths, fears and stereotypes affect the employer's treatment of an individual, because Congress has recognized that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.

> Regarded as claims primarily fall into one of two categories: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

> A plaintiff claiming that he is "regarded" as disabled cannot merely show that his employer perceived him as *somehow* disabled; rather, he must prove that the employer regarded him as disabled *within the meaning of the ADA*. When "working" is the major life activity at issue, a plaintiff must demonstrate not only that the employer thought that he was impaired in his ability to do the job that he held, but also that the employer regarded him as substantially impaired in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities.

*Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 82-83 (1st Cir. 2008) (citations and most internal quotation marks omitted; emphasis in original).

Here, the defendant may well have believed that the plaintiff's impairment of leukemia and its treatment limited his ability to do his job as sergeant, but there is no evidence in the summary judgment record to support a conclusion that it mistakenly believed that he was substantially limited "in either a class of jobs or a broad range of jobs in various classes." From all that appears, the defendant's entire focus was on the plaintiff's ability to do his job as sergeant, as defined by the written description of that job. The defendant had been presented by the plaintiff with conflicting evidence, after he had been out of work for approximately a year: that he was entitled to disability benefits and that Dr. Hertler supported his application for those benefits, Defendant's SMF ¶ 4; Plaintiff's Responsive SMF ¶ 4; that he was concerned about air quality at the police station in relationship to his medical status, *id.* ¶ 6; that he was considering retirement, if the defendant would pay his health insurance premiums once he accepted the disability pension for which he was qualified, *id.* ¶¶ 8-9; and that he was not disabled and could perform as a sergeant without restrictions, again supported by Dr. Hertler, *id.* ¶¶ 9, 11, 14.

The paucity of the plaintiff's argument on this point makes the court's task more difficult. However, at the time the plaintiff again became unable to work at all due to his relapse, the defendant was still trying to determine whether the plaintiff was disabled. The plaintiff does not specify what discrimination he claims resulted from the defendant allegedly regarding him as disabled. I have already concluded that the relatively short delay between Dr. Bielecki's first examination of the plaintiff and the scheduling of the additional tests that Dr. Bielecki felt necessary cannot constitute that discrimination, on the showing made here.

The plaintiff's contention that the defendant's failure to return him to a modified, light-duty sergeant's job immediately upon its receipt of Dr. Bielecki's report limiting him, temporarily, to light duty work constituted disability discrimination perhaps has more relevance to this argument than it did to the plaintiff's earlier arguments.[23] This possibility is weakened, however, by the plaintiff's admission that the city solicitor, city manager, and chief of police never discussed the possibility of a light duty assignment for the plaintiff "because they needed to allow Dr. Bielecki's fitness-for-duty evaluation to conclude so he could advise the City what Plaintiff would be physically capable of doing upon a return to work." Defendant's SMF ¶ 53; Plaintiff's Responsive SMF ¶ 53. The plaintiff also concedes that the collective bargaining agreement provided that, where there is a dispute between the physician designated by the defendant and the employee's own physician regarding the employee's fitness to work, that question would be submitted to a third, mutually agreeable physician. *Id.* ¶ 18.[24] If the relevant time to assess the plaintiff's "regarded as" claim is the moment when the defendant received Dr. Bielecki's first report, allowing a return to a modified, light-duty job, then Dr. Bielecki's conclusion disagrees with that of Dr. Hertler, and the contract terms required referral to a third physician at that point, rather than the creation for the plaintiff of a job consistent with Dr. Bielecki's conclusion.[25]

Further, the plaintiff's insistence that the defendant was required to give him light-duty work immediately upon receipt of Dr. Bielecki's initial report undermines his "regarded as"

<hr>

[23] It is still difficult, though, to see how the plaintiff suffered economic damages as he was being paid his full sergeant's salary at the time, Defendant's SMF ¶ 5; Plaintiff's Responsive SMF ¶ 5, Plaintiff's Depo. at 100, and became unable to work due to his relapse only 32 days after the date of Dr. Bielecki's initial report to the defendant, Defendant's SMF ¶¶ 27, 36; Plaintiff's Responsive SMF ¶¶ 27, 36.

[24] The plaintiff's qualification of this paragraph of the defendant's statement of material facts contains only legal argument, Plaintiff's Responsive SMF ¶ 18, which is not responsive, and the facts in the paragraph have been admitted.

[25] I note, in this regard, the plaintiff's statement that he "does not dispute that the City was entitled to require medical evidence of his fitness to return to work." Opposition at 8. Nor does he argue, despite a suggestion in his unacceptable responses to two paragraphs of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶¶ 17-18, that the collective bargaining agreement violated any of the statutes upon which he bases his claims.

argument, because at that point the defendant could not have "mistakenly" regarded the plaintiff as disabled; Dr. Bielecki had informed the defendant that the plaintiff might *in fact* have a disability that required accommodation. This is evidence that the defendant's perception of the plaintiff as disabled, if such it was, was correct, rather than "arguably based on stereotyping of" the plaintiff. *Cf. O'Leary v. InfraSource Transmission Servs. Co.*, 758 F.Supp.2d 9, 26 (D. Me. 2010).

The evidentiary shortcomings discussed above make it unnecessary to address the parties' dispute about the essential functions of the sergeant's position. Motion at 15; Opposition at 15-16; Reply at 7.

## IV.    Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 30th day of June, 2014.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge